ADOLFO GARCIA V. THE STATE.

No. 16851. Delivered June 20, 1934.

The opinion states the case.

*Ney Wade,* of Beeville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to rob; the punishment, confinement in the penitentiary for five years.

Appellant and Antonio Garcia were jointly indicted on a charge of assault with intent to rob Manuel Castillo. Upon a joint trial both parties were convicted and their punishment assessed at confinement in the penitentiary for five years. The sentence of Antonio Garcia was suspended upon recommendation of the jury.

Castillo testified, in substance, as follows: He had been in the company of appellant and Antonio Garcia for some time prior to the assault. Appellant and Antonio had observed that he had some money in his possession. He separated from the parties but later appellant and Antonio approached him. Appellant exhibited a pistol and ordered him to deliver his money to him. He (the witness) ran away, and appellant and his companion obtained no money from him. The State introduced in evidence appellant's written statement, which, omitting the formal parts, reads as follows:

"Antonio Garcia and myself first saw Manuel Castillo at the carnival. We went from there to Emma's house. Manuel Castillo left and came back to the carnival by his self; then Antonio and I came back to the carnival. Castillo left the carnival with another man. We followed them up close to town. They came on to town. Then Antonio told me that he had a pistol. An-

tonio went to his brother Vicente Garcia's house and got the pistol. Then we (Antonio and I) hid in the alley near Alanis garage till Manuel Castillo and the man he went to town with came back by. Manuel and this man with him passed by and walked on near the corner of Alanis garage. The man with Manuel went on, and Manuel came back to town again. Then, when he came back this time me and Antonio held him up, stepped out of the alley and called to Manuel to stick 'em up. He broke and ran. I gave the pistol back to Antonio; then we walked together within a block of Emma's house. Antonio went to Emma's house, and I went to my mother's house and spent the night. The next time I saw Manuel, he was with Mr. White in his car about 8 o'clock when Manuel told Mr. White that I was the man that stuck the pistol in his belly."

Also the State introduced the written statement of Antonio Garcia, which we quote:

"I first met Manuel Castillo at a corner of a street a block or two north of the fair grounds' main entrance. Adolfo Garcia was with me when I met Manuel. Manuel said he was looking for a drink of liquor or beer, but he said that he could not find any, but he was more interested in finding a woman. Adolfo then told me that we might go over to the fair grounds and see if Emma would want to go with this man Manuel. We three, myself, Adolfo Garcia, and Manuel Castillo, went over to the fair grounds where the carnival was, and we found Emma and told Emma that this man Manuel wanted a woman, and asked her if she wanted to go with him, and she said that she would go with him. We four then went to her house. Manuel and Emma went into a room, and Adolfo and I went into the kitchen. Manuel did not have the change, but had a $5.00 bill. Manuel said that he would go back to the fair grounds and get the change for the $5.00 bill and return. He left there shortly thereafter. Adolfo and I followed him to the fair grounds. We saw Manuel at the fair grounds and asked him if he had gotten the change and was going back to Emma's house, and Manuel told us that he was then occupied in the carnival grounds in trying to get back some money that he had lost on some wheels, and as soon as this matter was straightened out he would then go over to Emma's house. I then started home, leaving the carnival grounds, and Adolfo came along with me. Adolfo then asked me if I had a pistol, and I told him no, and he asked me if I could get a pistol for him, and I told him yes. Then we went over to my brother's house Vicinte Garcia. Adolfo stayed on the outside, and I went

inside and asked Vicinte to loan me his pistol. Vicinte gave me the pistol, and I in turn walked out and gave it to Adolfo. Adolfo told me I had to go with him over to this place. We went over to this place. We went over to this place, and remained there until this man came back. The place I referred to is a little lane or passageway between two houses where Manuel had to pass to go to his room. Adolfo stayed at the front of the passage with his pistol, and I got further back in the passageway from the sidewalk. When Manuel was about to pass this passageway, Adolfo pointed the pistol at him and told him to raise up his hands. Manuel broke and run. After Manel had run away, Adolfo gave me the pistol and I returned this pistol to my brother Vicinte Garcia the next morning. I went to Emma's house and Adolfo went to his mother's house. Adolfo told me when he wanted to borrow the pistol that he wanted to hold up Manuel, and that Adolfo would give me some of the money for getting him the pistol. Adolfo told me that this man had lots of money, and that he wanted a pistol to take the money away from Manuel. We saw Manuel leave for his room and go up town, and knew that he would pass where we were stationed on his way back to his room."

Testifying in his own behalf, appellant denied that he assaulted Castillo for the purpose of robbing him. His version of the transaction was that Castillo had theretofore whipped him, and that he procured the pistol from Antonio Garcia for the purpose of whipping Castillo and getting even with him for what he had done to him.

There was an issue as to whether Antonio Garcia's written statement was voluntary. In his testimony Antonio repudiated the statements that tended to show an assault perpetrated for the purpose of robbery.

With the record in the condition as above shown, appellant timely and properly excepted to the charge of the court for its failure to instruct the jury that the written statement of Antonio Garcia could not be taken or construed as evidence of the guilt of appellant. The court overruled the exception, and failed to amend the charge. Of course, the statement of Antonio was admissible to show his guilt, but it could not be considered as against appellant. This question was recently passed on in Burns v. State, 57 S. W. (2d) 836. In the state of the record, the opinion is expressed that the matter presents reversible error.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.